UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2009 NOV -6  P 3: 05

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | |
|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br>Plaintiff<br><br>v.<br><br>ONE PARCEL OF LAND, and<br>LARGO WEST ONE, et al.<br>Defendants | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\*\*\*\*\*\*\*

MEMORANDUM

This case involves the taking of land. Seven years ago, the Washington Metropolitan Area Transit Authority ("WMATA") took approximately one acre from a 3.5-acre parcel owned by Largo West One Limited Partnership ("Largo West"). Now pending is WMATA's Rule 71.1(h) Motion for Pretrial Adjudication.[1] Docket No. 106. In its motion, WMATA asks the Court to deem it established for trial that Largo West's proposed use of the 3.5-acre parcel is speculative and non-compensable. For the reasons stated herein, the Court will, by separate Order of even date, GRANT WMATA's motion and exclude Largo West's proposed use from consideration.

I.  **Background**

In 1985, William Curtis purchased a 7.5-acre lot in Landover, Maryland. P.'s Ex. 2, Curtis Dep. 9. Curtis and Ronald Cohen formed Largo West One Limited Partnership, and Largo West purchased the lot on June 4, 1986. P.'s Ex. 5, Peters Appraisal 9. In 1987, Largo

---

[1] Federal Rule of Civil Procedure 71.1(h) requires the judge in a condemnation case to decide all issues presented except the amount of just compensation. See United States v. Reynolds, 397 U.S. 14, 19 (1970) (interpreting Rule 71.1 to require that "except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented"). Although a land commission is being used in this case, pretrial adjudication of a proposed use is appropriate because "[a land commission] is used as a substitute for the jury." WMATA v. One Parcel of Land, 691 F.2d 702, 705 n.2 (4th Cir. 1982).

1

West built an office/warehouse and parking area on the front 4 acres of the lot. P.'s Ex. 7, Hollander Dep. 50.

Largo West used the lot's rear 3.5 acres for storm water management by adding underground piping and a storm water retention pond. Id. Prior to 1989, Largo West prepared a site plan for the property that depicted a building on the rear 3.5-acre parcel. P.'s Ex. 8, Reddan Dep. 15. This conceptual layout, however, was never presented to or approved by Prince George's County. Id. 17.

Cohen eventually bought out Curtis and took over as the managing partner of Largo West. Curtis Dep. 37. In 1993, he gave a deed in lieu of foreclosure to the bank that held the mortgage on the lot. The deed conveyed only the front 4 acres. This effectively divided the lot into two parcels. In November 2002, WMATA filed the instant condemnation action. The subject property is one acre of the rear 3.5-acre parcel.

To date, the 3.5-acre parcel has been used exclusively for storm water management. Largo West claims the taking left enough land to build a 20,000 square foot office/warehouse building on the rear parcel. It seeks compensation for the difference between the market values of a development site for a 20,000 square foot building and a 36,000 square foot building. WMATA argues that Largo West's proposed use should be excluded because, in 2002, it was not reasonably probable that the parcel would have been developed for office/warehouse use.

**II.     Analysis**

   **A.     Legal Standard**

In a partial taking, just compensation is determined by the dimunition in market value of the property. Fair market value is "measured by the use that would bring the highest price – the 'highest and best' use." United States v. 69.1 Acres, 942 F.2d 290, 292 (4th Cir. 1991). Absent

2

proof to the contrary, the landowner's current use of the property is presumed to be the highest and best use. 69.1 Acres, 942 F.2d at 292.

If a landowner argues that a proposed use is highest and best, he or she bears the burden of establishing by a preponderance of the evidence (1) that the property is adaptable and needed for the proposed use, and (2) that it is reasonably probable that the new use will be implemented in the near future. Olson v. United States, 292 U.S. 246, 255, 257 (1934); see United States v. 27.93 Acres of Land, 924 F.2d 606, 512 (3d Cir. 1991) (applying preponderance of the evidence standard to a landowner's proposed use). The landowner need not show "imminent demand" for the proposed use. 69.1 Acres, 942 F.2d at 294. Rather, the proposed use must be "at a near enough point in the future to affect the current value of the property." Id. Proposed uses that "depend upon events or combinations of occurrences which . . . are not fairly shown to be reasonably probable" are to be excluded from consideration. Olson, 292 U.S. at 257.

### B. Largo West's Proposed Use

WMATA seeks to exclude Largo West's proposed use of the property for development as a 36,000 square foot office/warehouse. WMATA must prevail because (1) there is no evidence that, in 2002, development of the parcel was reasonably probable, and (2) the highest and best use opinion of Melville Peters, Largo West's appraiser, is inadmissible.

#### 1. Highest and Best Use

In 2002, conversion of the 3.5-acre parcel to office/warehouse use in 2002 was not reasonably probable for two reasons. First, there was no demand for the parcel for development purposes. Second, it is too speculative to conclude that, in 2002, the conditions necessary for development would have been satisfied in the reasonably near future.

The lack of demand for the 3.5-acre parcel weighs against finding that Largo West's proposed use was reasonably probable. See 4 Nichols on Eminent Domain § 12B.14 (3d ed. 2007) (listing elements of reasonable probability standard).[2] Several facts suggest that there was no market for the 3.5-acre parcel for development purposes.

Prince George's County was the initial tenant in the building on the adjacent 4-acre plot. Curtis Dep. 35. When the County sought to expand, it rented space elsewhere, despite Curtis's efforts to develop plans for the 3.5-acre parcel. Id. 35-37. When the bank took the 4-acre parcel by deed in lieu of foreclosure, it declined ownership of the adjacent 3.5-acre parcel. Cohen Dep. 218-19. Subsequently, Largo West admitted that it never found a prospective buyer for the parcel, despite showing it to several real estate brokers. Id. 219. Finally, Largo West has not paid the property taxes on the 3.5-acre parcel since 1997. Hollander Dep. 226, 372. No reasonable developer would seek to develop a parcel on which there is a significant tax lien when there are cheaper, readily available alternatives.[3]

Second, it is too speculative to conclude that, in 2002, the conditions necessary for development would have been satisfied in the reasonably near future. See Olson, 292 U.S. at 257 (holding that that prospective uses that "depend upon events or the combination of

---

[2] This leading treatise on eminent domain has interpreted the "reasonable probability" standard to require a showing of four elements:

- The potential use must not require a substantial expenditure of capital;
- The project must not be highly uncertain;
- The property must be physically adaptable to the potential use; and
- A market for the property must have existed, in fact, at the time of the taking, or must have been reasonably likely to exist in the near future.

Id.

[3] The parcel was eventually sold at a tax sale. The purchaser erroneously believed, however, that it was buying the building on the 4-acre lot. When it learned that the sale included only the 3.5-acre parcel, the purchaser sought to void the tax sale.

occurrences" that are not shown to be reasonably probable should be excluded from consideration). According to Alan Hirsch, a member of the Prince George's County Planning Department, no development of the parcel could have occurred unless several conditions were met. First, the owner of the adjacent parcel had to agree to the location and dimensions of utility easements so that utilities could be made available to the parcel. Second, the owner of the adjacent parcel would have to agree to an easement for vehicles to access the 3.5-acre parcel. Third, before it could approve the easement, Prince George's County had to conduct a traffic study of surrounding roads and intersections at the applicant's expense. Fourth, Prince George's County had to approve the applicant's plans for satisfying wetlands, storm-water management, building coverage, green space, and other zoning requirements.

Moreover, since 1995, Largo West has done nothing to reduce any of these uncertainties.[4] It is highly speculative to assume that all of these events would occur in the near future and at a competitive cost. Accordingly, Largo West cannot meet its burden of establishing that its proposed use was reasonably probable.

### 2. The Opinion of Largo West's Appraiser

Nevertheless, Largo West's appraiser, Melville Peters, concluded that the highest and best use of the parcel was for development of an office/warehouse. An expert witness's opinion is not admissible unless it found to be reliable, which requires proof that (1) the opinion is based on sufficient facts or data, (2) the opinion is the product of reliable principles or methods, and (3) the expert has applied the principles and methods reliably to the facts of the case. Fed. R. Evid.

---

[4] In its brief, Largo West asserts that the proper permits were obtained. This is false. A letter from Alan Hirsch, Supervisor of the Subdivision Section, Prince George's County Planning Department confirms that the property could not be developed without going through an expensive and time-consuming application and approval process.

702. Peter's opinion does not meet this standard because it is based on insufficient data and unreliable methods.

Peters's opinion was essentially based on two documents: the second conceptual drawing, which depicted a 36,000 square foot building on the 3.5-acre parcel, and a two-page a letter and sketch prepared by William Joyce, an engineer. P.'s Ex. 12, Peters Dep. 105. At deposition, Peters admitted that he relied on nothing else in forming his highest and best use opinion.

These sources do not provide a sufficient basis for an appraiser to reliably conclude that development was the highest and best use for the parcel. The conceptual drawing did not identify any of the legal or physical impediments to development, and the drawing was never presented to or approved by the county. In fact, Joyce's letter acknowledged that the county had only approved "the development of one (1) – 60,000 square foot building on the [entire] property." Joyce Letter 1, contained in P.'s Ex. 4, Peters Appraisal 73. Thus, in making his appraisal, Peters ignored the fact that the County had not approved building on the 3.5-acre parcel.

Moreover, neither of these sources indicated that the property had been split into two parcels. Ultimately, these sources merely represent Largo West's intentions to build an office/warehouse on the parcel. They are not probative of whether it was reasonably probable that, in 2002, such development would have occurred in the near future.

The financial aspect of Peter's highest and best use opinion is also flawed. An expert's opinion must be based on the application of reliable principles or methods to the facts of the case. Fed. R. Evid. 702. An assessor cannot assume future demand for a proposed use. Rather, "[t]here must be some objective support for the future demand." United States v. Whitehurst, 337 F.2d 765, 772 (4th Cir. 1964). To support a finding of demand, an assessor must have

knowledge of the condemned property and real estate in the surrounding area. See United States v. 60.14 Acres of Land, Etc., 362 F.2d 660, 668 (3d Cir. 1996) (holding that "the essential elements of the real estate expert's competency include his knowledge of the property and of the real estate market in which it is situated"). This knowledge can be obtained by methods such as visiting the property and analyzing sales data for comparable properties. See United States v. 68.94 Acres of Land, 918 F.2d 389, 395 (3d Cir. 1990).

Peters conducted no investigation to support the financial aspect of highest and best use opinion. The two sources on which Peters relied said little regarding the costs of converting the parcel to an office/warehouse. He neither visited the property nor conducted any economic research. He did not interview any county officials or review any county records to determine whether there were problems with access, utilities, or traffic that would increase the costs of development.[5] Rather, in reliance on Joyce's letter, Peters "assumed" adequate access and approval by the County. These are not reliable methods in making an appraisal.

Ultimately, the sources Peters relied upon and the methods he employed in reaching his conclusion do not meet the relevant standards. Accordingly, Peters's highest and best use opinion must be excluded.

### III. Conclusion

Largo West has not met its burden of establishing that its proposed use was reasonably probable. For the foregoing reasons, the Court will, by separated order of even date, GRANT WMATA's motion and exclude Largo West's proposed use from consideration.

---

[5] On deposition, Peters testified that he was aware of the cost of placing the storm water management facility underground. There is no evidence, however, that he considered the effect such a large cost would have on market demand for the parcel.

It is so ORDERED this 6th day of November, 2009.

_____
Benson Everett Legg
Chief Judge
United States District Court